UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAYVID JIMENEZ,

           **Plaintiff,**

 vs.
                  1:22-CV-984
CITY OF COHOES, et al.,         (MAD/TWD)

          **Defendants.**
_____

APPEARANCES:         OF COUNSEL:

**DAYVID JIMENEZ**
055-769-136
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020
Plaintiff, *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

 *Pro se* Plaintiff Dayvid Jimenez ("Plaintiff") commenced this action on September 19, 2022, alleging violations of his constitutional rights by Defendants City of Cohoes Police Department, Officer J. Murphy, and two John Doe individuals ("Defendants"). *See* Dkt. No. 1. Specifically, the complaint asserted that Defendants violated his Fourth and Fourteenth Amendment rights. *See* Dkt. No. 1 at 3.

 Magistrate Judge Therese Dancks conducted an initial review of the complaint and issued a Report-Recommendation and Order recommending that (1) Plaintiff's application to proceed *in forma pauperis* be granted for the purposes of filing and; (2) Plaintiff's complaint be dismissed with leave to amend. *See* Dkt. No. 12. Plaintiff filed timely objections. *See* Dkt. No. 13.

For the below stated reasons, while the Court adopts the Report-Recommendation in its entirety, it is modified in light of the proposed amended complaint that Plaintiff filed in addition to his objections.  *See* Dkt. No. 14.  And after thoroughly reviewing the proposed amendments and accompanying exhibits, which do not cure the deficiencies addressed by Magistrate Judge Dancks, the Court dismisses this action with prejudice.

## II.  BACKGROUND

For a complete recitation of relevant factual background as alleged in the initial complaint, the Court refers to Magistrate Judge Dancks's Report-Recommendation and Order.  *See* Dkt. No. 12.

## III.  DISCUSSION

**A.     Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error."  *O'Diah v. Mawhir*, No. 08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007).  After appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289,

295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has directed that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Thus, a "document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

B.   **Plaintiff's Objections**

Plaintiff filed timely objections in the manner directed by the Court. *See* Dkt. No. 13. However, following Magistrate Judge Dancks's Report-Recommendation, Plaintiff also filed numerous documents without permission, including a proposed amended complaint (Dkt. No. 14), a motion for preliminary injunction (Dkt. No. 16), a request for emergency stay of removal order (Dkt. No. 20), a withdrawal of the latter request, (Dkt. No. 21), and various letters and/or supplements to the proposed amended complaint (Dkt. Nos. 15, 17, 19, 22). Plaintiff contends that he was "mislead" by the Court's *pro se* complaint form insofar as he "believed that [he] needed to simply give a small brief to the court[,]" and not submit "exhibits, affidavits, grievance or witness statements, or other materials[.]" Dkt. No. 13 at 1. While Plaintiff filed the latter documents without permission and prior to a final decision on the Report-Recommendation, the Court has reviewed same and will discuss them separately, *infra*.

As to Plaintiff's specific objections, Plaintiff objects to Magistrate Judge Dancks's findings that there exists "reasonable probable cause to believe that a traffic violation has occurred." Dkt. No. 13 at 3. Plaintiff asserts that "[t]he ticket was not about using a turn signal. The ticket was

3

about the fact that the delusional officer believed that the signal light was not put on until I reached a full stop at the Stop sign on a road where I could have gone straight (if it was true that I did not put on my signal light)[.]" *Id.*  Plaintiff contends that he would have been pulled over notwithstanding "because this officer did not care about the signal light.  He cared about what I was doing or had done or maybe he just didn't like my face because of my complexion.  That ticket was dismissed." *Id.*  Moreover, Plaintiff contends that "[i]mmunity should not be used when these officers actions were beyond or out of the scope of their duties." *Id.* at 2.

Plaintiff also specifically objects to Magistrate Judge Dancks's finding that he "concedes Officer Murphy pulled him over for failing to signal." Dkt. No. 13 at 3.  Plaintiff asserts that he does not "concede" as much. *Id.*  Rather, Plaintiff contends that he "was pulled over because of the officer's assumption that [Plaintiff] did not put [his] signal light [on] until [he] reached a full stop at the stop sign.  Not that [he] did not put a signal light." *Id.* at 4.  Plaintiff states that the officer "assumed" that he violated New York Vehicle & Traffic Law Section 1163(b). *Id.*  Additionally, Plaintiff asserts that the Report-Recommendation erroneously refers to Section 1163(a)—a different provision of the state traffic law. *Id.*

Plaintiff also contends that there was "no probable cause to arrest [him] because there were no crimes committed neither criminal charges were filed." Dkt. No. 13 at 4.  Plaintiff states that he is alleging that "[O]fficer Murphy arrested [him] pursuant to a ICE Administrative Warrant not that [Plaintiff] committed a crime and was arrested." *Id.*  Plaintiff contends that "[t]here is nothing in the New York Law that allows local or state police officers to effectuate an ICE/DHS arrest warrant[] without the supervision of an ICE agent around." *Id.* (footnote omitted).

4

In her Report-Recommendation and Order, Magistrate Judge Dancks correctly determined that each of Plaintiff's claims should be dismissed for failure to state a claim and because a dispositive defense exists on the face of the complaint. *See* Dkt. No. 12 at 5. Plaintiff alleged that he was "racially profiled" and "pulled over and [] given a ticket for Insufficient Signal Light" before being arrested in connection with an outstanding warrant. Dkt. No. 1 at 6. However, Magistrate Judge Dancks found that "[t]he constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers[.]" *Id.* (citing *Whren v. United States*, 517 U.S. 806, 813-14 (1996)). The Court agrees with this finding.

Notably, the traffic law section that Plaintiff allegedly violated provides, in pertinent part:

> (a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway . . . or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.
>
> (b) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

N.Y. Vehicle & Traffic Law § 1163(a)-(b). While Plaintiff contends that he had signaled by the time he reached the stop sign, at no point in his complaint (or in his objections) does he claim to have signaled continuously within 100 feet. *See* Dkt. No. 13 at 3-4. Plaintiff simply reiterates that Officer Murphy followed and eventually stopped Plaintiff solely based on a malicious motivation. *See id.*; Dkt. No. 1 at 6. But even when accepted as true, the allegation does not overcome the objective basis for the traffic stop—namely, that Plaintiff failed to signal continuously within 100 feet. *See id.*; N.Y. Vehicle & Traffic Law § 1163(a)-(b). And as correctly pointed out in Magistrate Judge Dancks's Report-Recommendation, Fourth Amendment

5

claims are analyzed without reference to the officer's alleged subjective intent. *See* Dkt. No. 12 at 5.

Furthermore, Plaintiff has apparently retracted his claims and corresponding objections relative to the post-traffic-stop allegations, acknowledging that New York law permits state and local law enforcement officials to arrest and detain noncitizens based on immigration-related offenses. *See* Dkt. No. 22. In any event, relative to these allegations, the Report-Recommendation correctly determined that Plaintiff "failed to set forth a short and plain statement stating who did what to him, when they did it, and how he was injured." Dkt. No. 12 at 6 (citations omitted).

Finally, the Court notes that Plaintiff makes no specific objections as to the portion of the Report-Recommendation discussing and dismissing the municipal liability and official capacity claims. *See* Dkt. No. 12 at 6-8. The Court has reviewed those portions only for clear error, and has found none. *O'Diah*, 2011 WL 933846, at *1 (citations and footnote omitted); *McAllan*, 517 F. Supp. 2d at 679.

C.     **Proposed Amended Complaint**

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, in reviewing objections to a Magistrate Judge's Report-Recommendation, the Court is permitted to review additional evidence and modify the recommended disposition. Fed. R. Civ. P. 72(b). When allegations could not possibly amount to "a viable federal claim," a district court may dismiss these claims with prejudice and without leave to amend. *See Sonds v. Cuomo*, No. 11-CV-895, 2012 WL 952540, *4 (N.D.N.Y. Feb. 3, 2012). The Court has reviewed Plaintiff's proposed amended complaint with the affixed exhibits and subsequently filed supplements (Dkt. Nos. 14, 19, 22), and has determined that the proposed pleadings do not cure the deficiencies found by Magistrate

Judge Dancks. The proposed amended complaint fails state a cause of action and further confirms that dispositive defenses exist on its face. *See Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

According to the proposed amended complaint, in the morning hours of May 3, 2022, Plaintiff drove to pick up his girlfriend at a mechanic shop on Ontario Street in Cohoes, New York. *See* Dkt. No. 14 at ¶ 8. After his girlfriend got in the car, Plaintiff "looked up at [his] driver side mirror as [he] was about to pull out of the parking spot" and "noticed a police cruiser driving by on Ontario Street towards Park Avenue." *Id.* Plaintiff noticed that the officer inside the cruiser was "looking in [Plaintiff's] direction." *Id.*

To avoid the police cruiser, instead of getting on Ontario Street, Plaintiff "started driving up River Street" and "drove around the corner onto Breslin Avenue." Dkt. No. 14 at ¶ 9; Dkt. No. 19 at 2. Plaintiff's girlfriend told him "there is police [sic] we need to be careful because the Cohoes Police are very racist. Let [sic] make sure my seatbelt is buckled." *Id.* Plaintiff then saw the police vehicle "turning right from Park Avenue into Breslin Avenue." Dkt. No. 14 at ¶ 9. About that same time, Plaintiff was approaching a stop sign. *See id.* Plaintiff is "positive" that he signaled to turn left "because left was the only way [Plaintiff] knew to get back to the main road (Ontario Street)" and because he "never make[s] any turns without [his] signal lights." *Id.*

As the police cruiser passed by, Plaintiff felt "very strange that [the officer inside] kept staring at [Plaintiff's] face" as if they "knew each other." Dkt. No. 14 at ¶ 10. The officer then "pulled into a driveway to his right." *Id.* By that time, Plaintiff had stopped at the stop sign and, from his mirror, he "could see [the officer's] face through the opened passenger window of his cruiser still looking at [Plaintiff] with what it seem[ed] to be like a suspicious look." *Id.* Plaintiff "looked at all directions of Park Avenue before continuing about [his] business." *Id.* at ¶ 11.

7

Plaintiff then "turned left onto Park Avenue, reached the traffic light, [and] looked up at [his] review mirror[.]" Dkt. No. 14 at ¶ 11. Plaintiff saw that the police cruiser was following him behind another vehicle. *Id.* When the traffic light turned green, Plaintiff "turned left onto Ontario Street and "parked the car because for some reason [he] suspected that the officer had all the intentions of pulling [Plaintiff] over." *Id.* The police officer then parked behind Plaintiff and "turned on his lights." *Id.*

Officer Murphy got out of the cruiser, approached Plaintiff, and asked for his license and registration. *See* Dkt. No. 14 at ¶ 12. When Plaintiff asked why he had been pulled over, Officer Murphy informed him that he had not signaled "until [he] reached a full-stop at the STOP sign[.]" *Id.* Plaintiff indicates that, at the time, he "wanted to ask how far was 100 feet from the STOP sign, because [his] car does not come with a measuring tape[.]" *Id.* When Plaintiff provided the requested information, Officer Murphy asked him about what he was doing and where he was going. *See id.* at ¶ 13. Plaintiff explained that his girlfriend was dropping off her car and that he was new in the area. *See id.* Plaintiff also "apologize[d]" for "committ[ing] any infraction without any knowledge of it." *Id.*

As more police cars arrived on the scene, and as Officer Murphy "came back once again after a couple of trips back and forth to the driver window[,]" Plaintiff was asked if he could speak in private, and not in front of his passenger. *Id.* at ¶¶ 14-16. After getting out and walking to the rear of the car, an unnamed John Doe officer told Plaintiff "we have to place you under arrest because you have a warrant." *Id.* at ¶ 17. When Plaintiff asked what the warrant was about, the officer responded "[w]e will have to straighten this out at the precinct." *Id.*

Plaintiff was handcuffed and taken back to the police precinct. *See* Dkt. No. 14 at ¶¶ 19-22. At the precinct, two individuals "introduced themselves as DHS (Department of Homeland

8

Security) . . . ICE immigration." *Id.* at ¶ 23.  "Later in the day[,] one of the DHS officers handed [Plaintiff] a ticket for: Insufficient Turn Signal Less then [sic] 100 Feet," as issued by Officer Murphy *Id.* at ¶ 25.  Ultimately, "ICE" held Plaintiff at the Rensselaer County Jail for one month.[1]  *See* Dkt. No. 14 at ¶ 26.

While incarcerated in the Rensselaer County Jail, Plaintiff had a court appearance in connection with the traffic ticket.  *See* Dkt. No. 14 at ¶ 26.  Officer Murphy personally transported Plaintiff from the Jail to the Courthouse, where the ticket was eventually dismissed.  *See id.*  On the drive back to the Jail, Officer Murphy purportedly said "I don't care if they dismissed the ticket . . . You better keep your nose clean."  *Id.* at ¶ 27.  Plaintiff "thought it was strange that he said that, because [they] have never come across each other before[.]" *Id.*  Plaintiff felt "very threaten[ed]" by the comment and believed that Officer Murphy "was either confusing [Plaintiff] with someone else or simply [] assumed that" Plaintiff is "trouble" because he is "a Black-Latino."  *Id.*

Plaintiff alleges that he later received the following information from ICE explaining how the agency effectuated his arrest:

> On May 3rd, 2022 ICE ERO Albany received a phone call from Cohoes City PD stating [Plaintiff] was currently stopped on a traffic stop for vehicle and traffic violations.  Cohoes PD issued [Plaintiff] ticket for traffic violation and towed his vehicle, transporting him back to the station where ICE ERO met and took [Plaintiff] into custody without incident.

Dkt. No. 14 at 43.  According to ICE, Plaintiff purportedly has "current administrative charges" pursuant to Section 237(a) of the United States Immigration and Nationality Act for "Aggravated Felony: 101(a)(43)(F) Crime of Violence" and "Domestic Violence," and an "extensive and

---

[1] Plaintiff currently remains in federal custody at an immigration detention center in Batavia, New York.  *See* Dkt. No. 14 at ¶ 5.

9

complex criminal history, including a criminal conviction for strangulation 2nd."[2] Dkt. No. 14 at 43.

Herein, the Court finds that the proposed amended complaint fails to state a cause of action because the Supreme Court and the Second Circuit have held unequivocally that an officer's subjective intent is irrelevant to Fourth Amendment claims concerning traffic stops. *See United States v. Weaver*, 9 F. 4th 129, 145 (2d Cir. 2021) (*en banc*); *Whren v. United States*, 517 U.S. 806, 813-14 (1996).  "Since the test is an objective one, the constitutional reasonableness of a traffic stop does not turn on the subjective motivation of the officers involved." *Brace v. Johnson*, 2023 WL 2027274, *1 (2d Cir. Feb. 16, 2023) (summary order) (citing *Whren*, 571 U.S. at 813).  Rather, "[a] police officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that the vehicle's occupants are engaged in unlawful conduct." *Id.* (citing *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017)). Reasonable suspicion "requires 'some minimal level of objective justification for making the stop'" and "is a less demanding standard than probable cause." *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also Hawthorne by Hawthorne v. County of Putnam*, 492 F. Supp. 3d 281, 295 (S.D.N.Y. 2020) (citing *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)) ("It is well-settled in this Circuit that a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment").

Plaintiff's proposed amended complaint does not cure the deficiencies noted in the Report-Recommendation.  If anything, the proposed pleading and accompanying exhibits confirm that no

---

[2] The exhibits affixed to Plaintiff's proposed amended complaint also indicate that, just several weeks prior to the traffic stop, Plaintiff was purportedly arrested by Cohoes City Police "on Assault 3rd charges."  Dkt. No. 14 at 43.

plausible claim exists. For instance, Plaintiff submits as an exhibit Officer Murphy's sworn statement regarding the traffic stop, which avers the following:

> I observed [Plaintiff's] vehicle traveling east on Breslin Avenue and noted that the vehicle[']s turn signal did not come on until it was at a complete stop at the aforementioned intersection. Vehicle then made a left turn. During a traffic stop I identified the driver as [Plaintiff]. Also during the stop it was determined that [Plaintiff] has an expired CT drivers license and an active administrative warrant out of the Department of Homeland Security.

Dkt. No. 14 at 38. While Plaintiff alleges that he is "positive" that he had signaled by the time he reached the stop sign, at no point does he plead that he signaled continuously for 100 feet, which was the basis of the violation. *Id.* at ¶ 9; *see* N.Y. Vehicle & Traffic Law § 1163(b). Accordingly, the Court finds that Plaintiff has failed to plausibly allege that the stop was unwarranted.[3]

Furthermore, while it is unclear as to whether Plaintiff has completely abandoned his claims as to the post-traffic stop allegations, out of an abundance of caution, the Court will discuss same. *See* Dkt. No. 22. As an initial matter, courts in the Second Circuit "have found that the issuance of a traffic ticket alone does not give rise to a false arrest claim[.]" *Hawthorne*, 492 F. Supp. 3d at 300 (collecting cases). While a prolonged stop resulting from "investigative inquiries unrelated to the traffic violations" may run afoul of the Fourth Amendment, it is well-established that "[b]eyond determining whether to issue a traffic ticket," an officer may make "'ordinary inquiries incident to [the traffic] stop.'" *United States v. Gomez*, 877 F.3d 76, 90-91 (2d

---

[3] The Court notes that both Plaintiff and his girlfriend indicate that they were actively trying to avoid the attention of law enforcement prior to the stop. *See* Dkt. No. 14 at ¶¶ 8-10; Dkt. No. 19 at 2. To the extent Plaintiff claims that Officer Murphy violated his Fourth Amendment rights by following him, it is well-established that "an officer's decision to trail another vehicle does not implicate the Fourth Amendment." *Brace*, 2023 WL 2027274, at *2 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998)).

Cir. 2017); *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)).  As the Supreme Court has stated, "[t]ypically such inquires involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355 (citations omitted).

Plaintiff asserts that he is currently detained "as a result of what initiated as a [sic] assumed minor traffic violation . . . that turned into a false arrest/false imprisonment." Dkt. No. 14 at ¶ 5.  It is inferred from Plaintiff's allegations that Defendants learned of his arrest warrant upon checking into the information that he provided at the scene. *See id.* at ¶¶ 13-17.  "When an officer learns from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person." *United States v. Miller*, 265 Fed. Appx. 5, 7 (2d Cir. 2008) (citing *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999)).  Thus, to the extent Plaintiff still contends that his resulting arrest was unlawful, such claim is meritless because the outstanding warrant established probable cause. *See id.*

Furthermore, there are no allegations that Officer Murphy or any of the John Doe officers engaged in any improper investigative inquiries outside the scope of an ordinary traffic stop.  According to Plaintiff, Officer Murphy simply asked him for his license and registration, and inquired about what he was doing and where he was going.[4]  *See* Dkt. No. 14 at ¶¶ 12-18.  It was only after the officers notified Plaintiff of the warrant that he was placed under arrest and

---

[4] The proposed amended complaint also alleges that Officer Murphy asked whether the vehicle's Ignition Interlock Device belonged to Plaintiff.  Dkt. No. 14 at ¶ 16.  The Court finds this to be a reasonable inquiry in the context of the traffic stop as it further confirmed Plaintiff's status as an authorized driver.

transported from the scene. *See id.* at ¶¶ 17-18. Thus, it cannot be said that Defendants violated Plaintiff's constitutional rights in connection with any inquiries preceding his arrest.

Finally, the Court notes that Plaintiff has made virtually no attempt to replead his municipal liability and official capacity claims. As such, the proposed amended complaint fails to assert such claims for the same reasons discussed in the Report-Recommendation. *See* Dkt. No. 12 at 6-8.

Accordingly, considering that Plaintiff has already been given an opportunity to replead his claims, and considering that the Court has thoroughly reviewed Plaintiff's proposed amended complaint and exhibits, which include sworn witness statements and documentation from the agencies that effectuated his arrest, the Court finds that even a liberal reading of Plaintiff's allegations fails to infer that a valid claim might be stated. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

### IV. CONCLUSION

After carefully reviewing the entire record in this matter and the applicable law, and for the above-stated reasons the Court hereby

**ORDERS** that Magistrate Judge Dancks's Report-Recommendation (Dkt. No. 12) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**MODIFIES** the Report-Recommendation and Order to include dismissal with prejudice; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) be **ACCEPTED for filing**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and the Court further

13

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 22, 2023
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge